STATE of Missouri, Respondent,

v.

Jack Lee BOUNDS, Appellant.

No. 49857.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 19, 1986.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Sept. 17, 1986.

Application to Transfer
Denied Oct. 14, 1986.

Holly G. Simons, St. Louis, for appellant.

William L. Webster, Atty. Gen., Paul La-Rose, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Defendant, Jack Lee Bounds, appeals from his conviction on one count of capital murder, § 565.001 RSMo (1978), and one count of first degree assault, § 565.050 RSMo (1978). Defendant received consecutive prison sentences of fifty years without the possibility of probation or parole for the capital murder charge and thirty years for the first degree assault charge.

On appeal, defendant contends that the trial court erred in: (1) excluding expert testimony on the path of the fatal shot to Richard Stiteler; (2) overruling defendant's motion to suppress and admitting into evidence the shotgun sleeve and shells which were seized from defendant's automobile; and (3) denying defendant's motion for a new trial on the basis of newly discovered evidence. Finding each of these points without merit, we affirm.

Defendant does not challenge the sufficiency of the evidence. A review of the evidence in a light most favorable to the verdict establishes that on May 23, 1983, at approximately 3:00 a.m., defendant entered the home of his former wife, Ethel Stiteler, and went into the bedroom where she was sleeping with her current husband, Richard Stiteler. After a brief conversation with Ethel, defendant shot Richard Stiteler twice with a shotgun, one shot to his body and the second to his head. As those shots were fired, Ethel left the bed and ran into a closet. Defendant fired two shots at her through the closet doors, one shot hitting her in the left shoulder.

After leaving his weapon at the scene of the shooting, defendant drove to his daughter's house. Defendant attempted to get a gun from his son-in-law, Fred Smith, and confessed to shooting Richard and Ethel. Defendant stated that he wanted the gun so that he could provoke the police to shoot him when he was arrested. Smith refused to give defendant a weapon and defendant drove away. Smith then called the home of Richard and Ethel Stiteler and told the police at the scene that defendant had just left their house and, after describing defendant's vehicle, stated that defendant could be headed toward the police station for a shoot-out.

After the shooting, police began transmitting bulletins throughout the surrounding area linking defendant to the shooting and accurately identifying the year, make and color of defendant's vehicle, and its Arkansas license plates. Subsequent bulletins stated that defendant could be headed toward the police station for a shoot-out. After receiving these transmissions, Officer Maret, a St. Charles County Sheriff's Department deputy, observed defendant driving a vehicle matching the description. Officer Maret stopped defendant and while exiting his vehicle, defendant stated that he had no guns and asked the officer to shoot him. Defendant was placed under arrest and, after defendant had been removed from the scene, Officer Maret conducted a search of defendant's vehicle. In the trunk of the car, the officer discovered a shotgun sleeve and a paper bag containing shotgun shells.

Defendant waived his right to a jury trial, and the case was tried to the court. After hearing all the evidence, the court convicted defendant of murdering Richard Stiteler and assaulting Ethel Stiteler. Defendant filed a motion for new trial which the trial court denied. Defendant then appealed to this court.

In his first point on appeal, defendant contends the trial court erred in preventing defendant from eliciting the expert opinion of Dr. George Gantner, a forensic pathologist, as to whether Richard Stiteler was shot in the front or the back of the head. The trial court sustained the state's objection to this question on the ground that the doctor was unable to form an opinion to a reasonable degree of medical certainty.

Questions as to the admissibility of proffered expert testimony in a criminal proceeding are within the sound discretion of the trial court. *State v. Hensley*, 655 S.W.2d 810, 811 (Mo.App.1983). Our review is limited to determining whether that discretion has been abused and, if so, whether defendant has thereby been prejudiced. *State v. Jones*, 518 S.W.2d 304, 311 (Mo.App.1975).

In the instant case, the record below shows no abuse of discretion. Defendant raises this point on appeal because the trial court sustained the state's objection when defense counsel asked the following question during redirect examination of Dr. Gantner: "[C]an you tell me whether or not you have an opinion as to whether or not ... this shot came from the front or the rear?" The trial transcript shows, however, that during cross-examination of Dr. Gantner this precise question had been asked by the prosecuting attorney and answered by the doctor:

[Prosecuting attorney] From your viewing of the [evidence] could you indicate to the court, could you tell whether or not—could you give to a reasonable medical certainty whether or not the shot was from the front or the back?

[Dr. Gantner] No, I couldn't.

Given that the answer to defendant's question was already in evidence, we can discern no prejudice to defendant resulting from the trial court's ruling on the state's objection. Accordingly, this point is denied.

In his second point on appeal, defendant argues that the trial court erred in overruling defendant's motion to suppress and in admitting into evidence the shotgun sleeve and shells seized during a warrantless search of defendant's automobile. Defendant contends that the search was conducted without a warrant and without probable cause in violation of defendant's right to be free from unreasonable searches and seizures.

As a general rule, warrantless searches violate the fourth amendment. The United States Supreme Court has, however, created several exceptions to this general rule, including the "automobile" exception. Under this exception, automobiles and other conveyances are distinquished from fixed premises because it would be impracticable to require a warrant for a vehicle which can be easily moved out of the jurisdiction where the warrant is sought. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970). Hence, a warrantless search of an automobile is justified where there is probable cause to believe that the vehicle contains weapons, contraband or evidence of a crime. *State v. Berkwit*, 689 S.W.2d 763, 767 (Mo.App.1985). Once the vehicle has been lawfully stopped and the police officer reasonably suspects such items, a subsequent search of every part of the vehicle is valid. *State v. Ferguson*, 678 S.W.2d 873, 876 (Mo.App.1984).

In the instant case, the circumstances which created probable cause to stop and arrest defendant also furnished probable cause for the subsequent search of his vehicle. Officer Maret had received several bulletins identifying defendant and his vehicle, and warning that defendant could be headed to the police station to engage in a shoot-out. Hence, when Officer Maret observed defendant driving near the scene of the shooting in a vehicle matching the description which had been transmitted to him, the officer formed a reasonable belief that defendant was the suspect involved in the shooting. The defendant's statement that he had no weapons and his request that Officer Maret shoot him after he was stopped, combined with the previous information received from the police bulletins, gave the officer probable cause to arrest

defendant and probable cause to believe defendant was transporting weapons in order to engage in a shoot-out with the police. Officer Maret thus conducted a valid search of every part of defendant's vehicle and discovered the shotgun sleeve and shells in the trunk. The trial court did not err by admitting these items into evidence at trial because they were seized during a search based on probable cause. This point is denied.

In his final point on appeal, defendant argues that the trial court erred in denying defendant's motion for a new trial on the basis of new evidence discovered after trial. At trial, defendant's former wife, Ethel, stated that defendant told her, "you promised you would never marry." Defendant now seeks to introduce his daughter's testimony that Ethel admitted to her that defendant had never made this statement. Defendant argues that this new evidence is material to the issue of defendant's state of mind because, to convict defendant on capital murder, the state was required to prove that defendant acted with deliberation.

The trial court has broad discretion in deciding whether to grant a motion for new trial on the basis of newly discovered evidence and, even though such evidence may be useful to defendant, the trial court is not required to grant the motion if the evidence is not likely to affect the verdict. *State v. Williams*, 652 S.W.2d 102, 114 (Mo. banc 1983). For the trial court to grant a new trial on this basis, defendant must show the following:

1. The facts constituting the newly discovered evidence have come to the movant's knowledge after the end of the trial;

2. Movant's lack of prior knowledge is not owing to any want of due diligence on his part;

3. The evidence is so material that it is likely to produce a different result at a new trial; and

4. The evidence is neither cumulative nor merely of an impeaching nature.

*State v. Davis*, 698 S.W.2d 600, 602 (Mo. App.1985).

We reject defendant's argument on this point because it is obvious that the proffered testimony of defendant's daughter, which constitutes the newly discovered evidence, is not so material that it would probably produce a different result in a new trial. The daughter's testimony relates only to defendant's state of mind at the time of the shooting. This issue was, however, addressed by several of the state's witnesses. For instance, defendant's son-in-law testified that on the night of the shooting defendant told him: "I went into the house. I had my gun and I shot them." And defendant's sister-in-law testified that defendant told her he had five shells in his gun, two for his ex-wife, two for her new husband, and one for defendant himself. Given the weight of this evidence regarding defendant's state of mind, the newly discovered evidence would have been wholly immaterial. Defendant's final point is, therefore, denied.

The judgment is affirmed.

KAROHL, P.J., and SIMON, J., concur.