The PEOPLE OF THE TERRITORY OF GUAM, Plaintiff–Appellee,

v.

John N. REYES, Defendant–Appellant.

No. 87–1403.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 15, 1988.

Decided July 10, 1989.

Frederick J. Horecky, Horecky & Wheeler, Agana, Guam, for defendant-appellant.

James N. Bostic, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

Before O'SCANNLAIN and TROTT, Circuit Judges, and EZRA *, District Judge.

DAVID A. EZRA, District Judge:

John N. Reyes ("Reyes") appeals from a December 7, 1987 decision by the Appellate Division of the District Court for the Terri-

tory of Guam ("Appellate Division") affirming his conviction in the Guam Superior Court for manslaughter[1] and use and possession of a deadly weapon in the commission of a felony.[2] In affirming, the Appellate Division held that "it was not an abuse of discretion or manifest error for the Superior Court to allow the introduction of [a pathologist's] testimony about his opinion of the position of the victim's body at the time she was shot." For the reasons stated below we affirm the decision of the Appellate Division.

## FACTS

This case arises out of the September 2, 1984 shooting death of Bernice Brub ("decedent"). Pursuant to 9 Guam Code Ann. § 16.40(a)(1), (b) and § 80.37, respectively, Reyes was charged with criminal homicide and unlawful possession and use of a deadly weapon in the commission of a felony.

At trial, Reyes testified that he shot Ms. Brub accidentally while he was cleaning his rifle. Guam, however, contended that the shooting was intentional rather than accidental. Consequently, Guam relied in part on the expert[3] testimony of Dr. Hee–Yong Park, the Chief Medical Examiner of the Territory of Guam who, over Reyes' objections, was allowed to testify concerning the existence, description and possible cause of a bruise on the decedent's body and the position of the decedent at the time she was shot.

At the conclusion of the trial, the jury found Reyes not guilty of homicide, but convicted him on the lesser included offense of manslaughter, a general intent crime,[4] and on the charge of the possession and use of a deadly weapon in the commission of a felony. Reyes is currently serv-

---

* Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

1. See 9 Guam Code Ann. § 16.50.

2. See 9 Guam Code Ann. § 80.37.

3. Dr. Park was qualified as an expert in forensic pathology by the Superior Court. In this regard, the court took judicial notice of the fact that Dr. Park has been Chief Medical Examiner

for the Territory of Guam for the last thirteen years, has almost thirty years experience in the area of forensic pathology, and has been qualified as an expert forensic pathologist and pathologist by the Superior Court of Guam on numerous occasions in the past.

4. See 9 Guam Code Ann. § 16.50(a); 9 Guam Code Ann. § 4.30(c).

ing an eight year sentence in the Guam penitentiary.[5]

Reyes appealed his conviction to the Appellate Division pursuant to 48 U.S.C. § 1424–3(a), (b). The parties framed as the issue on appeal whether the superior court had erred in admitting the testimony of Dr. Park concerning the position of the decedent's body when shot. The Appellate Division answered in the negative and affirmed the judgment of the superior court.

The record reflects that Reyes never directly raised at the Appellate Division the issue whether the trial court erred in admitting the testimony of Dr. Park as to the cause of the bruise on the decedent's chest. Reyes referred to Dr. Park's bruise testimony in the argument section of his Opening Brief, but did not challenge its admissibility.[6] However, in the argument section of its Appellate Division Opening Brief, Guam did address the bruise testimony by citing authority supporting its admissibility, and the Appellate Division related in its opinion that the admissibility of the bruise testimony was one of the bases for Reyes' appeal although it failed to expressly rule on that issue.

Reyes now appeals the Appellate Division Opinion setting forth the following issues in his opening brief:

1. Did the trial court err in admitting speculative testimony by a pathologist concerning the cause of a bruise on the body of the decedent?

2. Did the trial court err in permitting the pathologist to speculate concerning the position of the deceased when she was shot?

## ANALYSIS

### A. Preservation of the Bruise Issue

Before proceeding to the merits of the first issue, we must decide if Reyes can now raise the issue of Dr. Park's bruise testimony when that issue was not properly raised on appeal to the Appellate Division below. Reyes maintains that the issue of Dr. Park's bruise testimony was in fact properly raised on appeal at the Appellate Division as evidenced by the parties' Opening Briefs and the comment made by the Appellate Division in its opinion even though the court "did not specifically address the issue in its opinion."

Guam R.App.P. 14(a)(2), patterned after Fed.R.App.P. 28, requires that an appellant's brief contain, inter alia, a statement of the issues presented for review; an argument containing the contentions of the appellant with respect to the issues presented; and a conclusion stating the precise relief sought. In practice, appellate "[b]riefs are read liberally to ascertain the issues raised on appeal [but] ... issues that clearly are not designated in the appellant's brief normally are deemed [waived]." Federal Sav. and Loan Ins. Corp. v. Haralson, 813 F.2d 370, 373–74 n. 3 (11th Cir. 1987) (citations omitted); see also Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988) (issues raised in brief not supported by argument deemed abandoned). This practice follows from the rationale that "[i]n preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed." Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983).

■ In the instant case, while Reyes did not specifically list Dr. Park's bruise testimony in the "Statement of Issues" section of his Opening Brief, he touched upon it sufficiently to prompt Guam to fully argue the propriety of its admissibility. Indeed, the Appellate Division recognized this issue as one of Reyes' grounds for appeal. Therefore, while this issue was not directly raised by Reyes in his briefs to the Appellate Division below, the Appellate Division, as well as Guam, was aware of, understood, and, presumably, considered the issue.

---

5. Reyes was sentenced to three years and a mandatory five years on the manslaughter and use and possession convictions, respectively.

6. Reyes, however, failed to refer to this issue again in his Reply Brief and there is no evidence that either party argued this issue during oral argument before the Appellate Division panel.

Accordingly, while we do not sanction Reyes' complete disregard of the Rules of Appellate Procedure in making and preserving his record, we decline to apply the waiver rule to the issue of Dr. Park's bruise testimony under the particular facts and circumstances of this case in order to prevent manifest injustice. *See Leer,* 844 F.2d at 634. We will therefore consider the bruise issue on its merits.

### B. *Standard of Review*

The standard of review for the admission of expert testimony in a criminal trial is set forth in *United States v. Binder:*

> The trial court's decision on the admissibility of expert testimony is reviewed for an abuse of discretion or "manifest error." *United States v. Marabelles,* 724 F.2d 1374, 1381 (9th Cir.1984). Erroneous admission of expert testimony is reversible if the admission more probably than not materially affected the verdict. *See United States v. Valle–Valdez,* 554 F.2d 911, 916 (9th Cir.1977).

*Binder,* 769 F.2d 595, 601–02 (9th Cir.1985).

### C. *The Bruise Issue*

At trial, Dr. Park testified that the bruise was "most likely caused by pressure ... poking with the tip of the gun against the chest wall." Dr. Park supported this likelihood with testimony that the rifle barrel, measuring 1.5 centimeters in diameter, was consistent with the bruise, measuring 1.5 by 1.2 centimeters. In further support, Dr. Park testified that the bruise was also in close proximity to the bullet's entry point. In concluding, Dr. Park stated that "it [was] safe to assume that bruise probably happened at the same time or prior to the [shooting]."

Reyes, however, contends that Dr. Park's testimony concerning the cause of the bruise was speculative because Dr. Park could not establish when the bruise was inflicted in relation to the shooting.[7] In support of his contention, Reyes argues, citing *United States v. Vretta,* 790 F.2d 651 (7th Cir.), *cert. denied,* 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986) and *Fitzgerald v. Manning,* 679 F.2d 341 (4th Cir.1982), that the opinion testimony on causation of a medical expert must be stated in terms of a "reasonable degree of medical certainty."

■ We note that, while the cases cited by appellant only inferentially support his proposition, appellant's position does have some merit. *See, e.g., State v. Holt,* 17 Ohio St.2d 81, 85, 246 N.E.2d 365, 367 (Ohio 1969); *Martin v. United States,* 284 F.2d 217, 218 (D.C.Cir.1960); *State v. Bounds,* 716 S.W.2d 458, 460 (Mo.Ct.App.1986).[8] We have never had occasion to decide whether expert testimony on causation in the context of a criminal trial must be based on a reasonable degree of medical certainty. We need not decide this issue now, for we find that, although Dr. Park did not use the words "reasonable degree of medical certainty" in his testimony, the record amply demonstrates that he based his testimony on the substantive equivalent thereof.

■ Reyes also challenges the admissibility of the bruise testimony on the grounds of relevancy in light of the fact that Dr. Park was unable to establish exactly when the bruise occurred. We note, however, that Reyes was charged with criminal homicide, which requires a specific intent to kill.[9] The fact that the bruise was probably caused by the "poking" of a gun barrel against the decedent is highly relevant to this issue. The jury could reasonably conclude that such poking was a threat, and thus the act would be relevant even if it occurred as much as twenty-four hours before the shooting.

---

**7.** On cross-examination Dr. Park stated that there was "no scientific way" to determine exactly when the bruise occurred.

**8.** *But see People v. Johnson,* 114 Ill.2d 170, 197, 102 Ill.Dec. 342, 353, 499 N.E.2d 1355, 1366 (1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1618, 94 L.Ed.2d 802 *reh. denied,* 481 U.S. 1060, 107 S.Ct. 2205, 95 L.Ed.2d 860 (1987) (expert's lack of certainty goes to weight of testimony not admissibility); *People v. Columbo,* 118 Ill. App.3d 882, 960, 74 Ill.Dec. 304, 362, 455 N.E.2d 733, 791 (Ill.App.Ct.1983), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2394, 81 L.Ed.2d 351 (1984) (same).

**9.** *See* 9 Guam Code Ann. § 16.40(a)(1).

Finally, Reyes maintains, citing *United States v. Marshall*, 526 F.2d 1349 (9th Cir. 1975), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 426 U.S. 923, (1976), that Guam, as the proponent of evidence based upon expert testimony, had the burden of laying a proper foundation showing the underlying scientific basis and reliability of the expert's testimony. In *Marshall* the District Court refused to allow the defendant to introduce polygraph test results. In affirming the District Court, we stated: "Because the polygraph has yet to gain general judicial recognition, the proponent of such evidence has the burden of laying a proper foundation showing the underlying scientific basis and reliability of the expert's testimony." *Marshall*, 526 F.2d at 1360 (citation omitted). In the instant case, Dr. Park's analysis was based on his own specialized training and skills made in conjunction with his examination of the decedent at the crime scene and the ensuing autopsy. Unlike the polygraph, these methods of analysis based upon medical examination have long received general judicial recognition.

▇ The admissibility of expert testimony is governed by 6 Guam Code Ann. § 702, which reads as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.[10]

Admission of Dr. Park's expert testimony concerning the bruise was consistent with the terms of § 702. Dr. Park had been Chief Medical Examiner of Guam for thirteen years at the time he performed the autopsy on the decedent. As a regular part of his duties he performed autopsies to determine the final cause and manner of death. The size, shape, location, and color of the bruise are all factors that Dr. Park was better able and qualified to evaluate than the jury. Dr. Park's testimony was of substantial assistance to the jury in understanding the probable relationship between the bruise and the rifle. Accordingly, it was not an abuse of discretion nor manifest error to permit Dr. Park's bruise testimony.

D. *Issue Concerning the Position of the Decedent at the Time of the Shooting*

The Appellate Division affirmed the superior court's admission of Park's testimony concerning the position of the decedent when she was shot. In so affirming, the Appellate Division cited *State v. Sparks*, 297 N.C. 314, 325, 255 S.E.2d 373, 380–81 (1979). In *Sparks*, the defendant was charged with murdering a police officer. At trial the prosecution sought to introduce the testimony of a forensic pathologist who was qualified as an expert. The testimony sought to be introduced concerned the position of the victim's body at the time he was shot based on the path of the bullet through the victim's body. The trial court allowed the testimony over the objection of the defendant. The Supreme Court of North Carolina, affirming the trial court, held that the testimony was properly admitted. The North Carolina Supreme Court stated the test to be: " 'whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact.' " *Sparks*, 255 N.E.2d at 381 (citations omitted).

▇ The Appellate Division found that, based on the *Sparks* test, Dr. Park's testimony was admissible:

We agree with the Supreme Court of North Carolina. A pathologist is in a better position than an ordinary person to account for the effect of the internal organs, tissues, and bones on the path of a bullet through a body. Accordingly, it was not an abuse of discretion or manifest error for the Superior Court to allow the introduction of Dr. Park's testimony about his opinion of the position of the victim's body at the time she was shot.

We agree with the Appellate Division. Dr. Park, a qualified forensic pathologist, testified based on his experience, expertise, and personal examination of the body. Dr. Park was able to determine the position of the decedent when she was shot based on

---

10. Section 702 is identical to Fed.R.Evid. 702.

the path of the bullet through her body. This testimony required scientific and specialized knowledge and an analysis of the location of the entry and exit wounds on her body, the location of the bullet hole in the wall, and the distances involved. Dr. Park's testimony did not invade the province of the jury, but was well within the range of his experience and expertise and was of substantial assistance to the jury in understanding the evidence. Under these circumstances it was not an abuse of discretion or manifest error for the Superior Court to have allowed the testimony of Dr. Park as to the position of the decedent at the time she was shot.[11]

### CONCLUSION

We affirm the decision of the Appellate Division in all respects.

AFFIRMED.

---

11. We note that as a matter of policy, where accident is the defense in a criminal homicide trial, expert testimony should not be unduly restricted since a key witness, the victim, is unavailable to testify. Moreover, we note that any error resulting from the trial court's admitting the challenged portions of Dr. Park's testimony is harmless because that testimony was directed to the issue of intent, an issue upon which Reyes was ultimately acquitted.