947 F.2d 950
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PEOPLE OF THE TERRITORY OF GUAM, Plaintiff-Appellee,
v.
James Leon GUERRERO, Defendant-Appellant.
 No. 90-10224.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1991.
Decided Nov. 8, 1991.
 
 Before SCHROEDER, FLETCHER and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James N. Leon Guerrero appeals from the order of the Appellate Division affirming his murder conviction in the Superior Court of Guam. He claims that the Superior Court erred in admitting incriminating statements he made to Guam officials because he made the statements involuntarily and in connection with plea discussions. We reverse.
 
 FACTS
 
 3
 On Wednesday, June 24, 1987, Guam Department of Corrections ("DOC") officer Douglas Mashburn was stabbed to death and his corpse was set on fire in the control room of one of the dormitories in the Adult Correctional Facility in Mangilao, Guam ("ACF"). Shortly after the murder, DOC officials put Leon Guerrero, who was serving a seven-year sentence in the ACF for aggravated assault, robbery, and auto theft, and three other ACF inmates, Irvin Ibanez, Jose Blas Baza, and Alex Kitano, into closed confinement. Clothed only in their undershorts, they were locked in individual cells without mattresses, sheets, blankets, pillows, or toilet paper, and were subjected to strip searches. Leon Guerrero later asserted that DOC officials also beat him, repeatedly sprayed mace in his cell directing it at him, refused to let him shower, and at one point forced him to masturbate in front of them. DOC officials denied these assertions. On Friday, June 26, Leon Guerrero and the three other inmates were questioned by officers at the Guam Police Department and then returned to the ACF. The same day, Leon Guerrero and Ibanez were indicted for aggravated murder.
 
 
 4
 On Saturday, June 27, Leon Guerrero made the first of his incriminating statements, informing a DOC Supervisor, Lieutenant Crisostomo, about the location and owner of the knife used to kill Mashburn. Leon Guerrero was removed from the ACF that afternoon and housed overnight at "Pedro's Plaza" (in police headquarters). That night he met with David Lujan, the attorney who had represented him on the charges for which he was serving time in the ACF. The next morning, Sunday, June 28, Leon Guerrero was put into the protective custody of two police department detectives, Mark Howard and Mike Morta. He then met with Lujan and Ladd Baumann, an attorney appointed to represent him because Lujan also represented Ibanez. Later that morning, Leon Guerrero and his counsel met with Frances Tydingco-Gatewood, Guam Assistant Attorney General for the Division of Prosecution, and another prosecutor at the office of the Guam Attorney General.
 
 
 5
 On Sunday afternoon, following the discussions between Leon Guerrero, his counsel, and the prosecutors, Leon Guerrero was interviewed three times by police detective Mark Howard. At the first interview, conducted at the Attorney General's office, Leon Guerrero denied any participation in the actual murder, but admitted that he had participated in the planning and had burned Kitano's bloodstained clothing afterwards. Leon Guerrero then took a lie detector test, which, according to Howard, he had agreed to take pursuant to a plea agreement. [II Motion to Suppress Transcript ("MST") at 36] He failed the test. In the subsequent interviews, conducted at Pedro's Plaza, Leon Guerrero again stated that he participated in the planning of the murder (including how the knife should be used), but this time he added that he had thrown gasoline on Mashburn's corpse and ignited it.
 
 
 6
 On the next day, Monday, June 29, Leon Guerrero signed a plea agreement, pleading guilty to the lesser included charge of murder in exchange for a sentence running concurrently with the sentence he was serving, with eligibility for parole after fifteen years and incarceration off the island of Guam. [ER tab 30 at 3] On July 2, as part of his obligations under the plea agreement, Leon Guerrero testified before a grand jury about the plan to kill Mashburn. He testified that the knife was owned by Ibanez; that he obtained the knife and instructions on how to use it from Ibanez; that he gave the knife and conveyed the instructions to Kitano; that he saw Baza choke Mashburn while Kitano stabbed him; that Ibanez ran in, grabbed the knife from Kitano, and finished off the job; that he burned Kitano's blood-soaked shorts; and that he poured gasoline on Mashburn's corpse and burned it. [ER tab 29] This testimony essentially corroborated the testimony of Baza and Kitano.
 
 
 7
 Leon Guerrero was sentenced in accordance with his plea agreement on July 10, and judgment was entered on July 13. On September 30, also in accordance with his plea agreement, Leon Guerrero testified at the trial of Ibanez. He recanted his earlier versions of the murder, denying both his own and Ibanez's involvement in the murder and claiming that guards had abused him in the ACF. The next day, the government filed a motion to vacate Leon Guerrero's plea agreement on the ground that he had violated it by lying at Ibanez's trial. On October 5, Leon Guerrero filed his written consent to the government's motion, [CR tab 53] but the government withdrew its motion on October 27.
 
 
 8
 On November 3, Leon Guerrero filed a motion to withdraw his plea and vacate his plea agreement and sentence on the grounds that the plea had been coerced by DOC officials and GPD officers, that the court had not adequately informed him of his rights, and that to enforce the agreement would constitute a manifest injustice. On January 7, 1988, Judge Paul Abbate of the Superior Court granted Leon Guerrero's motion on the first and last grounds. [ER tab 17] Leon Guerrero's case was set for trial.
 
 
 9
 On September 30, 1988, Leon Guerrero filed a motion to suppress all the statements he had made concerning Mashburn's murder--including the statement to Crisostomo, the statements to Howard, and the grand jury testimony--contending that they were made involuntarily and that Judge Abbate's ruling constituted law of the case to that effect. In the alternative, he argued that the statements were inadmissible because they arose in connection with plea bargaining. [CR 100, 103, 104] With little oral, and no written, explanation for his ruling, Judge Ramon Diaz of the Superior Court refused to treat Judge Abbate's ruling vacating the plea agreement as law of the case on the issue of admissibility, and he denied the motion to suppress except with regard to Leon Guerrero's statement to Crisostomo. [II MST at 250-51]
 
 
 10
 During the four-day jury trial in late October and early November of 1988, the government introduced the incriminating statements made to Howard but did not seek to introduce the grand jury testimony. The jury acquitted Leon Guerrero of aggravated murder but convicted him of the lesser included charge of murder. Leon Guerrero was sentenced to life imprisonment with eligibility for parole after fifteen years, to run concurrently with the sentence he was already serving at the ACF. Judgment was entered on February 6, 1989, and Leon Guerrero timely appealed to the Appellate Division of the United States District Court for the Territory of Guam. The Appellate Division affirmed the conviction, and Leon Guerrero filed a timely notice of appeal to this court. We have jurisdiction pursuant to 48 U.S.C. § 1424-3(c).
 
 DISCUSSION
 
 11
 Leon Guerrero contends that his incriminating statements should have been suppressed because they were involuntary and because they were made in connection with plea discussions.[1] We agree with the latter contention and thus do not reach the former.[2]
 
 
 12
 At the suppression hearing, Leon Guerrero argued that all of the incriminating statements should be suppressed because they were made in connection with plea negotiations. However, Leon Guerrero did not brief this argument in his appeal to the Appellate Division. The government claims that he has therefore abandoned or waived the argument.[3] Leon Guerrero counters that the panel can consider the issue because it was raised before the Superior Court and because the Ninth Circuit applies de novo review to the decisions of the Appellate Division. See Guam v. Yang, 850 F.2d 507, 511 (9th Cir.1988) (en banc).
 
 
 13
 In Guam v. Reyes, 879 F.2d 646 (9th Cir.1989), we considered whether to review an issue that Reyes had raised in Guam Superior Court but had not raised in his brief to the Appellate Division. We concluded that "while this issue was not directly raised by Reyes in his briefs to the Appellate Division below, the Appellate Division, as well as Guam, was aware of, understood, and, presumably, considered the issue." Id. at 648. We "decline[d] to apply the waiver rule to the issue ... in order to prevent manifest injustice." Id. at 649. Under Reyes, we will consider the merits of an argument raised before the Superior Court of Guam, though not before the Appellate Division, if to do otherwise would result in "manifest injustice." We find that such is the case in the present appeal.
 
 
 14
 Under Guam law,
 
 
 15
 Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.
 
 
 16
 8 Guam Code Ann. § 60.80(f). This provision is based on Rule 11(e) of the Federal Rules of Criminal Procedure, see 8 Guam Code Ann. § 60.80(f) NOTE, under which statements made during discussions of a guilty plea that is later withdrawn are inadmissible.[4] Where a Guam rule of criminal procedure is based on a federal rule, we interpret the Guam rule as we do the federal rule. Yang, 850 F.2d at 512 n. 8. The test for whether a statement has been made in connection with plea discussions has two prongs: the defendant must have "exhibited an actual subjective expectation that he was negotiating a plea at the time of the discussion," and that expectation must have been "reasonable given the totality of the circumstances." United States v. Danny Leon Guerrero, 847 F.2d 1363, 1367 (9th Cir.1988); see also United States v. Pantohan, 602 F.2d 855, 857 (9th Cir.1979).
 
 
 17
 We generally review the trial court's factual determination of whether the parties were engaged in plea discussions for clear error. Danny Leon Guerrero, 847 F.2d at 1367. Though the Superior Court made no findings of fact in support of its ruling, our review of the record reveals that the Superior Court's implicit finding that the statements were not made in connection with plea discussions is clearly erroneous. Leon Guerrero's testimony at both the hearing on the plea withdrawal motion and the hearing on the motion to suppress demonstrates his subjective belief that he was involved in plea discussions at the time he made the statements. For example, when Leon Guerrero was asked at the plea withdrawal hearing why he had talked about his involvement in the killing, he responded, " 'Cause Frances [Tydingco-Gatewood] offered me a deal." Arguments and Writ of Habeas Corpus ad Testificandum Transcript at 43 (Dec. 29, 1987). The "deal" was that if he talked, he would not be sent back to the ACF, where he had suffered the abuse of DOC guards, and would serve his sentence for his involvement in the Mashburn murder off the island of Guam. Id. at 43-44. As Leon Guerrero explained later in the same testimony, "Frances said they'd send me off island if I plead guilty." Id. at 46. Leon Guerrero gave similar testimony at the suppression hearing. See II Motion to Suppress Transcript ("MST") at 211 (Oct. 19-26, 1988).
 
 
 18
 It is equally clear that Leon Guerrero's belief that he was involved in plea negotiations was "reasonable given the totality of the circumstances." Danny Leon Guerrero, 847 F.2d at 1367. First, the circumstances under which he made the statements are consistent only with plea discussions: just before making the statements he met with his own counsel and then together with Guam prosecutors. It is simply inconceivable that, having had the opportunity to consult with counsel and meet with prosecutors, Leon Guerrero would have made the statements without indications from the prosecutors that he would receive the quid pro quos embodied in the plea agreement he signed soon after making the statements. That Leon Guerrero was already under indictment for the crime and was in Howard's custody at the time he made the statements similarly evidences the connection between the statements and plea discussions. See Danny Leon Guerrero, 847 F.2d at 1368.
 
 
 19
 Howard's testimony at the suppression hearing conclusively establishes that the statements were made in connection with plea discussions. Howard testified that after Leon Guerrero's meeting with the prosecutors, Mrs. Tydingco-Gatewood instructed him to interview Leon Guerrero and told him "that they have tentatively entered a plea agreement for his cooperation in this case." II MST at 34. Howard similarly testified that Leon Guerrero, when questioned concerning any prior criminal activity, "was telling the police everything that he had done, but that was part of the agreement that his attorney had reached with the AG's Office." II MST at 40. Howard's testimony that Leon Guerrero submitted to the polygraph test pursuant to the plea agreement [II MST at 36] seals our conclusion that Leon Guerrero's statements were made in connection with plea discussions.
 
 
 20
 In disputing this conclusion, the government relies on the following colloquy between Judge Diaz and Leon Guerrero at the suppression hearing:
 
 
 21
 THE COURT: How many times were you offered the plea agreement before you signed it? When you signed it, was it the first time it was offered to you?
 
 
 22
 THE WITNESS: Yes.
 
 
 23
 THE COURT: The first time?
 
 
 24
 THE WITNESS: As far as I know, your Honor.
 
 
 25
 THE COURT: There was no discussion of the plea agreement before that, is that correct? When they told you about it, you signed it?
 
 
 26
 THE WITNESS: Yes.
 
 
 27
 ....
 
 
 28
 THE COURT: .... And you say when it was first offered that's when you signed it?
 
 
 29
 THE WITNESS: Yes.
 
 
 30
 II MST at 210, 212. Judge Diaz's questions focus on when Leon Guerrero actually signed the plea agreement and on when the agreement was first offered to him; neither the questions nor Leon Guerrero's responses suggest that there were no plea discussions during Leon Guerrero's meeting with prosecutors the day before he signed the agreement. Moreover, just after this exchange between Judge Diaz and Leon Guerrero, the government engaged in the following recross-examination in an effort to demonstrate that the plea agreement actually was offered to Leon Guerrero on Saturday the 28th, the day before he signed it:
 
 RECROSS EXAMINATION BY MR. KONDAS:
 
 31
 Q James, so you discussed ... You signed the plea agreement on the 29th, correct?
 
 
 32
 A Yes, sir.
 
 
 33
 Q Okay. When was it first offered to you?
 
 
 34
 A I can't recall.
 
 
 35
 Q Was it on the 28th?
 
 
 36
 A 28th, yes, they offered me.
 
 
 37
 Q Okay.
 
 
 38
 A But I signed it on the 29th.
 
 
 39
 Q Okay. So you had some time to think about it before you signed it, correct?
 
 
 40
 A Yes.
 
 
 41
 II MST at 213-14. In light of this exchange between Leon Guerrero and the government, the colloquy between Judge Diaz and Leon Guerrero is simply too ambiguous to cast doubt on the substantial evidence that Leon Guerrero's statements were made in connection with plea discussions. The Superior Court's implicit factual finding that the statements were not made in connection with plea discussions was clearly erroneous, and the admission of the incriminating statements against Leon Guerrero constituted a manifest injustice.
 
 
 42
 Having determined that Leon Guerrero's incriminating statements should not have been admitted, we nevertheless must review "the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt." Arizona v. Fulminate, --- U.S. ----, 111 S.Ct. 1246, 1265 (1991). As the Supreme Court stated in Fulminante, "[a] confession is like no other evidence." 111 S.Ct. at 1257. Because of the "profound impact" that a defendant's confession has on a jury, we must "exercise extreme caution before determining that the admission of the confession at trial was harmless." Id. at 1258.
 
 
 43
 Apart from Leon Guerrero's statements to Howard, the evidence consisted primarily of testimony by Baza and Kitano; testimony by Feliciano Borja Mariur, a prisoner to whom Leon Guerrero spoke of his involvement in the Mashburn murder; and circumstantial evidence, including evidence that gasoline was used to burn Mashburn's corpse and that Leon Guerrero had access to gasoline. Though this evidence may be substantial, we cannot say that the erroneous admission of Leon Guerrero's statements was harmless beyond a reasonable doubt. In Fulminante, the Court found no harmless error even though only one of two confessions by the defendant was found to be inadmissible; the Court refused to find harmless error even though the jury had before it another, properly admitted confession of the defendant. By contrasat, no second confession was before Leon Guerrero's jury. Furthermore, the only three witnesses with direct knowledge of the relevant events other than Leon Guerrero were hardly unimpeachable: Baza and Kitano were coconspirators and had agreed to testify against Guerrero pursuant to plea bargains; Mariur had prior convictions for burglary (twice) and possession and distribution of controlled substances, and, in connection with a charge of criminal sexual conduct, had entered into a plea agreement under which he was to provide cooperation to the government in several other cases before his sentencing. [III Trial Transcript at 58-59, 84-85 (Nov. 1, 1988) ] Without Leon Guerrero's statements, the jury very well might have found the testimony of these witnesses to be less than credible. Leon Guerrero's statements to Howard without doubt were the centerpiece of the government's case. Their erroneous admission was not harmless beyond a reasonable doubt.
 
 
 44
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because the Superior Court suppressed the statement to Crisostomo and the government did not introduce the grand jury testimony at trial, only the statements made to GPD detective Howard are at issue in this appeal
 
 
 [2]
 We also, therefore, do not reach Leon Guerrero's argument concerning the Superior Court's jury instructions
 
 
 [3]
 The government, relying on Guam v. Kingsbury, 649 F.2d 740 (9th Cir.), cert. denied, 454 U.S. 895 (1981), and subsequent cases, also argues that we lack jurisdiction to consider this issue. The argument is without merit. Kingsbury held that decisions of the Appellate Division can be reviewed only if they are "final," and that in determining finality in that context the court must apply the standard developed by the United States Supreme Court for review of state decisions under 28 U.S.C. § 1257. 649 F.2d at 742. The Kingsbury rule addresses the finality of a decision where further proceedings are pending, a circumstance not present in this case. The rule simply does not apply to Leon Guerrero's final direct challenge to his conviction
 
 
 [4]
 Fed.R.Crim.P. 11(e) reads in relevant part:
 (6) Inadmissibility of Pleas, Plea Discussions, and Related Statements. Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
 (A) a plea of guilty which was later withdrawn;
 (B) a plea of nolo contendere;
 (C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or
 (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.