UNITED STATES of America, Plaintiff-Appellee,

v.

David Miles PANTOHAN, Defendant-Appellant.

No. 78–3255.

United States Court of Appeals, Ninth Circuit.

May 18, 1979.

Jerry I. Wilson, Honolulu, Hawaii, for defendant-appellant.

Walter M. Heen, U. S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before BROWNING, CHOY and HUG, Circuit Judges.

CHOY, Circuit Judge:

Appellant was convicted of unlawfully possessing a sawed-off shotgun in violation of 26 U.S.C. § 5861(d). We affirm.

## I. Statement of the Case

A confidential informant told an agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF) that he had personally observed Pantohan in possession of a shotgun at the home of Pantohan's father, where Pantohan was residing. The ATF agent obtained a search warrant based upon the informant's statement.

Shortly thereafter six ATF agents executed the warrant. They entered the unlocked residence and searched the house. They found the shotgun in a footlocker located in appellant's bedroom.

Later that day ATF agent Lee telephoned Pantohan. The men made an appointment to meet the next day. Sometime after Pantohan arrived at Lee's office he was advised of his Miranda rights.[1] Pantohan told Lee and another ATF agent that he had previously been convicted of a felony and that he had found the shotgun and put it in the footlocker.

Lee asked Pantohan for information about criminal activities of others, stating that the United States Attorney would be told of his cooperation. Although Pantohan provided some general information concerning a cache of weapons in the city of Kailua, the information was not communicated to the United States Attorney.

After being indicted, Pantohan filed motions to discover the identity of the informant; for a bill of particulars as to the time, place, and manner in which the crime occurred and the persons present; to suppress his statement; and to quash the indictment. The district judge referred these motions to a magistrate.

The magistrate denied or recommended denial of all of the motions except the mo-

---

1. Pantohan has not pressed any claim of a violation of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Scrutiny of the record reveals no such viable claim.

tions requesting disclosure of the informant's identity and requesting a bill of particulars. Upon appeal to the district court, it adopted all of the recommendations and affirmed the magistrate's orders, except that the district court reversed the orders requiring disclosure of the informant's identity and disclosure of the witnesses to the crime.

Pantohan was found guilty by a jury. He appeals his conviction, claiming error as to the rulings on his pretrial motions.

## II. *Motion to Suppress Pantohan's Statements to ATF Agents*

Pantohan contends that his statements to the ATF agents were made during plea bargaining and therefore they should have been suppressed. *See* Fed.R.Crim.P. 11(e)(6); Fed.R.Evid. 410.

Although the magistrate and the district court concluded that no plea bargaining was taking place when Pantohan made his statements, Pantohan argues that he subjectively believed that such bargaining was going on. He argues that his subjective belief suffices to render his statements inadmissible, citing *United States v. Geders*, 566 F.2d 1227 (5th Cir. 1978), and *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977).

■ Subsequent to those panel decisions, the Fifth Circuit sitting en banc has disapproved of a purely subjective test and has reversed the panel decision in *Geders*. *United States v. Geders*, 585 F.2d 1303, 1305 (5th Cir. 1978) (en banc); *see United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978) (en banc). Discussing in considerable detail the policy implications of Fed.R. Crim.P. 11(e)(6) and Fed.R.Evid. 410, and the role of plea bargaining in our law enforcement system, the Fifth Circuit held that in determining whether a statement was made during plea negotiations

> [t]he trial court must apply a two-tiered analysis and determine, first, whether the

accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.

*Robertson*, 582 F.2d at 1366; *see Geders*, 585 F.2d at 1305. For the reasons stated in *Robertson*, we adopt the Fifth Circuit's bifurcated test.

■ Under the *Robertson* test the magistrate and district court properly refused to suppress the statements. Pantohan apparently felt that cooperating with the ATF agents was "the only way out." However, he knew that he was not under arrest at the time of the statements, there was no "promise" other than to tell the United States Attorney of the cooperation, and there was no plea offer—no plea bargaining. Since the statements were not made during plea negotiations, they do not require suppression.

## III. *Motion to Quash Indictment*

■ Pantohan argued below that because his statements were inadmissible under Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410, and because the grand jury heard the statements, the indictment must be quashed. Inasmuch as the magistrate and the district court properly determined that the statements did not have to be suppressed, they also properly rejected this claim. *See* part II *supra*.[2]

## IV. *Specific Intent for 18 U.S.C. § 5861(d)*

■ We reject Pantohan's claim that the district court improperly failed to give a specific intent instruction. Section 5861(d) is not a specific intent crime. *See United States v. Freed*, 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356, 361 (1971); *United States v. Thomas*, 531 F.2d 419, 421–22 (9th Cir.), *cert. denied*, 425 U.S. 996, 96 S.Ct. 2210, 48 L.Ed.2d 821 (1976). Pantohan's constitutional claims are utterly frivolous.

---

**2.** We do not discuss what effect, if any, the grand jury's use of an inadmissible statement would have upon the validity of its indictment.

## V. *District Court Review of Magistrate's Decisions*

The magistrate granted Pantohan's motion for disclosure of the name of the informant who had told ATF about Pantohan's possession of the shotgun. *See* part I *supra.* The magistrate also granted Pantohan's motion for a bill of particulars, ordering the Government, *inter alia,* to inform the defendant of "the name and address of any one who might have been present at the scene of the offense . . . ." The district court reversed the magistrate's decisions on these points.

█ Pantohan now claims that the district court erred because it did not expressly find that the magistrate's decisions were either "clearly erroneous" or "contrary to law." Pantohan contends that 28 U.S.C. § 636(b)(1)(A) mandated that reversal was proper only under these standards. Assuming *arguendo* that the district court could properly reverse the magistrate only if the magistrate's decisions were clearly erroneous or contrary to law, we believe that the district court's failure to make such findings was harmless error.

### A. *Identity of Informant*

█ In ordering the Government to reveal the informant's identity, the magistrate noted that the "government has failed to make . . . a showing" "that the disclosure of the informant would result in physical injury, intimidation, etc. . . ." In placing that burden upon the Government and in ordering disclosure, the magistrate's decision was contrary to law.

In *United States v. Prueitt,* 540 F.2d 995 (9th Cir. 1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977), we noted:

"[T]he government's privilege to withhold an informer's identity must give way where his identity is 'relevant and helpful to the defense of the accused, or is essential to a fair determination' of his case." [Citations omitted.] However, "[m]ere speculation that the informer might possibly be of some assistance is not sufficient to overcome the public interest in

the protection of the informer." [Citation omitted.] In attempting to balance the government's interest in nondisclosure against the defendant's interest in preparing his case, our most recent decisions have placed the burden upon the accused to show the need for disclosure. [Citations omitted.]

*Id.* at 1003–04; *see United States v. Trejo-Zambrano,* 582 F.2d 460, 466 (9th Cir. 1978); *United States v. Calhoun,* 542 F.2d 1094, 1098 (9th Cir. 1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977).

The magistrate thus erred as a matter of law in placing the burden upon the Government. Moreover, Pantohan's papers before the magistrate, the district court, and this court establish no more than his mere speculation that the informer might possibly be of some assistance in preparing his case. Therefore, the magistrate's decision requiring disclosure of the informant's identity was contrary to law. Assuming *arguendo* that § 636(b)(1)(A) applied, the district court's failure to make the required findings was harmless.

### B. *Names and Addresses of Those Present at the Scene of the Crime*

The district court also reversed the magistrate's order that the Government reveal "the name and address of any one who might have been present at the scene of the offense . . . ." Assuming *arguendo* that in so doing the district court erred because it did not make the § 636(b)(1)(A) findings, this error also was harmless.

The Government did not call any witnesses to testify that they had seen Pantohan with the shotgun. At trial the Government relied upon Pantohan's statement that he had placed the gun in the footlocker and upon the testimony of the officers who found the shotgun in the footlocker to prove Pantohan's constructive possession of the shotgun.

In his papers filed before the district court, counsel for Pantohan contended that revelation of the names of any persons at the scene of the crime was necessary because "[t]here is no way for Defendant to

corroborate the government's allegation that the firearm was found in the house without knowing who was present at the time of the search and seizure."

However, anyone inside the Pantohan house at the time of the search would almost certainly have been a friend or relative of the Pantohans. Such a person would no doubt have voluntarily told the Pantohans of any "frame-up" of appellant, which is apparently what concerns appellant. Moreover, at trial the ATF agents testified that no one but Government officials were in the house at the time of the search. Finally, and most importantly, Pantohan's admission that he placed the shotgun in the footlocker vitiates any claim of a "frame-up." Accordingly, the district court's reversal of the magistrate's order, if error, was harmless.

AFFIRMED.