**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Danny LEON GUERRERO,**
**Defendant–Appellant.**

No. 87–1138.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 28, 1988.[*]

Decided May 16, 1988.

---

[*] The panel finds this case appropriate for submission without oral argument prusuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Howard Trapp, Agana, Guam, for defendant-appellant.

D. Paul Vernier, Jr., Asst. U.S. Atty., Agana, Guam, for plaintiff-appellee.

Before BRUNETTI, KOZINSKI and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Danny Leon Guerrero to be referred to as Guerrero, appeals his conviction, following a conditional guilty plea, for bribery of an employee of a federally-funded agency in violation of 18 U.S.C. § 666, and for wire fraud in violation of 18 U.S.C. § 1343. Guerrero contends that the district court erred in denying his motion to suppress inculpatory statements made to FBI agents. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## FACTS AND PROCEEDINGS

On May 19, 1986, Guerrero was informed by the FBI that they were investigating allegations that he had paid kickbacks to Guam government officials to secure government contracts for his business. He was invited to an interview at the FBI office. On May 20 and May 21, 1986, Guerrero appeared voluntarily at the FBI

office, and denied that he had paid kickbacks to Guam government officials. Guerrero agreed to take a polygraph examination, but while reviewing the questions that would be asked, Guerrero stated he wanted to confer with his attorney. The FBI then terminated the interview.

On May 29, 1986, Guerrero again appeared voluntarily at the Guam FBI office and told FBI Agent Hilley that he wanted to cooperate with the investigation, that he did not want to consult with an attorney, and that he would consent to a polygraph examination. Before signing a waiver-of-rights form, Guerrero asked what his cooperation would mean. Agent Hilley told him that the courts generally consider whether a criminal defendant has cooperated; he also stated that United States Attorney Vernier would decide whether any charges would be brought against Guerrero and emphasized that the FBI had no control over the prosecutor or the court and could make no promises.

Guerrero then asked to speak to Attorney Vernier regarding the effect of his cooperation. Attorney Vernier came to the FBI office and told Guerrero that his cooperation would be taken into consideration in any future handling of cases involving him, that whether to cooperate was Guerrero's choice, and that he had the right not to cooperate. Guerrero reasserted his desire to cooperate and signed a waiver-of-rights form. He then admitted paying kickbacks to several Guam government officials. In subsequent interviews in June, and August, 1986, Guerrero made further incriminating statements and furnished the FBI with information regarding illegal activities by various Guam government officials.

There was no discussion of potential charges or pleas until October 3, 1986, when Guerrero met with Attorney Vernier and FBI agents. At that meeting, Vernier and Guerrero (unrepresented by counsel) negotiated a verbal plea agreement by which Guerrero agreed to plead guilty to one count of bribery. On October 7, 1986, when Vernier presented Guerrero with a written plea agreement which contained Guerrero's agreement to plead guilty to one count of bribery and one count of wire fraud, Guerrero stated that he wished to consult an attorney before signing; he never recontacted the FBI or Attorney Vernier.

On October 8, 1986, Guerrero was indicted on two counts of bribing an employee of a federally-funded agency, and on one count of wire fraud. Guerrero unsuccessfully moved to suppress all statements made by him on the ground that they were made involuntary and were made in the course of plea discussions. Thereafter, Guerrero entered a conditional guilty plea to one count of bribery and wire fraud. On May 6, 1987, he was convicted and sentenced to five years imprisonment and fined $25,000.

## DISCUSSION

On appeal, Guerrero contends that the district court erred in denying his motion to suppress all statements made to FBI agents because the statements are inadmissible on two grounds: (1) they were involuntary because they were obtained by United States Attorney Vernier's promise to consider Guerrero's cooperation in any future handling of cases involving him; and (2) they were made in the course of plea negotiations.

## VOLUNTARINESS

We review de novo a district court's determination that a criminal suspect's statement to law enforcement officers was voluntary. *United States v. Wolf,* 813 F.2d 970, 974 (9th Cir.1987).

■ Before a criminal defendant's statement can be used against him, the government must prove its voluntariness by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972); *United States v. Pinion,* 800 F.2d 976, 980 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987). An inculpatory statement is voluntary only when it is the product of a rational intellect and a free will. *Blackburn v. Alabama,* 361 U.S. 199, 208, 80 S.Ct. 274, 281, 4 L.Ed.2d 242 (1960);

*U.S. v. Crespo de Llano*, 830 F.2d 1532, 1541–42 (9th Cir.1987). The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne. *Haynes v. Washington*, 373 U.S. 503, 513–14, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963); *Pinion*, 800 F.2d at 980; *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir.1981).

■ A statement is involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976) quoting *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897). This broadly-stated rule has not been applied to invalidate, per se, all statements made by a suspect in response to a promise made by law enforcement personnel. The promise must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances.[1] *See Hutto v. Ross*, 429 U.S. at 30, 97 S.Ct. at 203; *Miller v. Fenton*, 796 F.2d 598, 608 (3d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 585, 93 L.Ed. 2d 587 (1986).

■ An interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect. *See United States v. Brandon*, 633 F.2d 773, 777 (9th Cir.1980); *United States v. Glas-*

gow, 451 F.2d 557, 558 (9th Cir.1971); *Fernandez–Delgado v. United States*, 368 F.2d 34, 35–36 (9th Cir.1966).[2]

Other circuits have ruled that representations made by a government prosecutor to a suspect during interrogation do not automatically make the suspect's subsequent statements involuntary. In *Martin v. Wainwright*, 770 F.2d 918, 924–27 (11th Cir.1985), *modified*, 781 F.2d 185 (11th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986), Martin challenged the voluntariness of his confession obtained during a five-hour interrogation in which the United States Attorney participated. Martin alleged several aspects of coercion: (1) the police denied his request to postpone the interrogation one day; (2) the three interrogators used a "good guy, bad guy" technique; (3) one detective falsely told Martin that his codefendant had confessed; (4) the United States Attorney promised to get Martin psychiatric help; and (5) the United States Attorney told Martin that while a confession would hurt him in the guilt phase of his bifurcated trial, it might help him in sentencing, and admonished that "only the truth can help you." The Eleventh Circuit found that although such tactics were distasteful, their cumulative effect was not sufficiently coercive to overbear Martin's will. *Id.* at 926. Specifically, the court stated that although the prosecutor should not have engaged in such discussions with a soon-to-be defendant, his indiscreet statements did not render Martin's confession involuntary. *Id.* at 927.

In *United States v. Watson*, 591 F.2d 1058, 1061 (5th Cir.), *cert. denied*, 441 U.S.

---

1. Causation, including but-for causation, has never been the test for voluntariness. *Hutto v. Ross*, 429 U.S. at 30, 97 S.Ct. at 203. If the test was whether a statement would have been made but for the law enforcement conduct, virtually no statement would be deemed voluntary because few people give incriminating statements in the absence of some kind of official action. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 224–25, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973).

2. Although an agent's promise to communicate a suspect's cooperation to the prosecutor does not render a subsequent confession involuntary, a suspect's will may be overborne if this prom-

ise is accompanied by threats or other coercive practices. *See Tingle*, 658 F.2d at 1332 (defendant's confession involuntary when it was induced by agent accusing defendant of lying, reciting the maximum penalties of crimes that could be charged, threatening defendant that she might not see her two-year-old child if she went to prison, and promising defendant that agent would inform the prosecutor if she cooperated or refused to cooperate). Also, threatening to inform the prosecutor of a suspect's refusal to cooperate violates her fifth amendment right to remain silent. *Tingle*, 658 F.2d at 1336 n. 5.

965, 99 S.Ct. 2414, 60 L.Ed.2d 1070 (1979), an FBI agent interrogating Watson, a suspect arrested on state charges, summoned the district attorney who told Watson that he would consider dropping the state charges if Watson cooperated with the FBI. The court held that Watson's subsequent confession to federal bank robbery was voluntary.

■ In Guerrero's case, Attorney Vernier's statement that Guerrero's cooperation would be taken into consideration in any future handling of cases involving him was not sufficiently compelling to overbear his free will and rational intellect. *See Martin v. Wainwright,* 770 F.2d at 924–27; *Watson,* 591 F.2d at 1061; *Fernandez–Delgado,* 368 F.2d at 35–36. Vernier did not promise Guerrero any tangible benefit (*e.g.,* no prosecution, reduced charges, or a recommendation of a lenient sentence). Also, Vernier stated that Guerrero had the right not to cooperate and that it was ultimately his decision, thus emphasizing Guerrero's right of free choice. Guerrero was an educated businessman with three years of college education and one year of law school. He came to the FBI office voluntarily on three occasions, including the May 29 visit. Each time he was fully advised of his constitutional rights. At Guerrero's request, he was given an opportunity to consult with his attorney before the May 29 interview. Guerrero was not detained or interrogated for a long period; he made his inculpatory statements at the start of the May 29 interview.

We conclude that Guerrero's statements were not involuntary.

## PLEA NEGOTIATIONS

Guerrero's second contention is that his inculpatory statements made to FBI agents in May, June and August, 1986, are inadmissible because they were made in the course of plea negotiations. Guerrero claims that in this case, plea discussions began on May 29, when he agreed to cooperate with the FBI in exchange for United States Attorney Vernier's promise that he would consider such cooperation in the handling of any future cases. Guerrero contends that from May 29, through August 1986, he fulfilled his commitment. He states that he admitted his payment of illegal kickbacks, and provided evidence incriminating Guam government officials, and then, on October 3, met with Attorney Vernier to formalize the previously discussed plea agreement. Characterizing all of his inculpatory statements made to the FBI on and after May 29 as statements made during the course of plea discussions, Guerrero argues that all of the statements are inadmissible.

■ Statements made in the course of plea discussions with a United States Attorney are inadmissible pursuant to Fed. R.Crim.P. 11(e)(6)(D) and Fed.R.Evid. 410. The district court's determination of whether parties were engaged in plea discussions is a factual finding reviewed for clear error. *United States v. Hudgens,* 798 F.2d 1234, 1236 (9th Cir.1986). A statement was made in the course of plea discussions if: (1) the suspect exhibited an actual subjective expectation that he was negotiating a plea at the time of the discussion; and (2) the suspect's expectation was reasonable given the totality of the circumstances. *See United States v. Doe,* 655 F.2d 920, 925 (9th Cir.1980); *United States v. Pantohan,* 602 F.2d 855, 857 (9th Cir.1979); *United States v. Robertson,* 582 F.2d 1356, 1366 (5th Cir.1978).

■ Guerrero, in bringing his suppression motion, did not claim that he subjectively believed he was engaged in plea discussions when he agreed to cooperate with the FBI on May 29. Nor does the record show that he manifested such a subjective belief to either Agent Hilley or Attorney Vernier during the May 29 meeting. Guerrero merely admitted paying kickbacks, and offered to cooperate with the FBI; this was not an offer to plead guilty. *See Doe,* 655 F.2d at 925 (an offer to cooperate is not equivalent to an offer to plead guilty); *Robertson,* 582 F.2d at 1368 (a bargained confession, even if prompted by a request or desire for leniency, is not a guilty plea which entails an admission of all elements of the charged crime).

Even if Guerrero had exhibited a subjective belief that he was negotiating a plea during the May 29 meeting, this belief was objectively unreasonable. In assessing the reasonableness of suspects belief that he was engaged in plea negotiations when he made incriminating statements, the court considers such factors as whether the suspect was in custody or charged with any crime, and whether there was any discussion of pleas or charges. *See Pantohan,* 602 F.2d at 856-57.

In this case, Guerrero went voluntarily to the FBI office to take a polygraph exam on May 29. Although he knew the FBI was investigating allegations that he paid illegal kickbacks to government officials, he had not yet been arrested or charged with any crime, and it was not clear that he would be. The United States Attorney's brief appearance and his vague promise that he would take any cooperation by Guerrero into consideration did not transform the FBI's investigatory interview with Guerrero into plea discussions. Neither Attorney Vernier nor Agent Hilley mentioned possible pleas, potential charges or sentencing recommendations. The first discussion of Guerrero pleading guilty to proposed charges occurred more than four months later on October 3, 1986.

The district court did not err in finding that the challenged statements, made well before October 3, were not made in the course of plea negotiations. *See Doe,* 655 F.2d at 925; *Pantohan,* 602 F.2d at 856-57; *Robertson,* 582 F.2d at 1368.

AFFIRMED.