996 F.2d 1229
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Javier TOSCANO-PADILLA, Defendant-Appellant.
 No. 92-30247.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 9, 1993.*
Decided June 16, 1993.
 
 Before: BRUNETTI, LEAVY and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Javier Toscano-Padilla appeals his conviction for conspiracy and aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Toscano alleges (1) the district court erred in refusing to suppress statements he made to the police while in custody; (2) the evidence was insufficient to sustain the convictions; (3) the government's conduct during the investigation violated his due process rights; and (4) he was denied effective assistance of counsel.
 
 
 3
 We determine the district court committed no errors, and thus we affirm.
 
 
 4
 * ADMISSION OF STATEMENTS
 
 
 5
 Toscano maintains the district court erred in refusing to suppress the incriminating statements he made to INS agents about his knowledge and involvement in the crime and the location of a kilogram of cocaine buried at his residence. He maintains he was not adequately advised of his Miranda rights and the statements he made were involuntary. We review de novo the voluntariness of a defendant's waiver of his right to remain silent. Terrovona v. Kincheloe, 852 F.2d 424, 428 (9th Cir.1988). However, "the factual findings underlying the adequacy challenge, such as what a defendant was told, are subject to clearly erroneous review." United States v. Connell, 869 F.2d 1349, 1351 (9th Cir.1989) (quotations omitted).
 
 
 6
 Toscano, who speaks and reads only Spanish, maintains that he did not understand the Miranda rights which were read to him and also could not understand the waiver form he signed, which was written only in English. "[A]ny language difficulties encountered by the defendant are considered to determine if there has been a valid waiver." United States v. Bernard S., 795 F.2d 749, 751 (9th Cir.1986). Two agents testified Toscano was read his Miranda rights in Spanish from a card preprinted in Spanish. The agent executing the written waiver form testified he translated into Spanish each paragraph of the English written waiver form before it was initialled and signed by Toscano.[1] The agent testified Toscano indicated he understood those rights. The agent's translation abilities were not questioned at trial, although we note the agent had received Spanish language instruction and had been using his Spanish language abilities on a regular basis over the course of his eighteen year career with the INS. Also, the fact that appellant has only an eighth grade education does not mean he does not have the ability to knowingly waive his Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 824 (9th Cir.1990) (sixteen year old with mental age of nine year old and I.Q. of 62 capable of understanding and waiving Miranda rights), cert. denied, 112 S.Ct. 161 (1991). The district court chose to believe the testimony of the two agents over the contrary assertions of appellant, and we cannot say the determination Toscano knowingly waived his Miranda rights was erroneous.
 
 
 7
 Appellant also maintains the coercive nature of the interrogation indicates his statements were not given voluntarily. "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir.1988). Our review of the transcript of the suppression hearing does not lead us to conclude the district court erred in determining Toscano's statements were given voluntarily. Appellant himself admitted he was not physically threatened during the interrogation. The agent testified the only promise made to appellant if he cooperated was that the prosecutor would be informed of such cooperation. An agent's "promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency." Leon Guerrero, 847 F.2d at 1366. Toscano asserts the agents promised to release him if he cooperated. We cannot say the district court's refusal to believe appellant's version of the interrogation was clearly erroneous.
 
 
 8
 The only "threat" which was apparently made during the interrogation was the agent informing Toscano that DEA wanted to "lock him up [and] forget about him." This statement certainly does not rise to the level of coercion necessary to invalidate otherwise voluntary statements made by the defendant. Nor do we find particularly egregious the fact that Toscano was interrogated in a small room or that the agent gave appellant one last chance to cooperate before ending the interrogation. We note that although the agents were supposedly coercive and threatening, appellant was nonetheless quite able to refuse to cooperate through most of the interrogation.
 
 
 9
 We decline to hold, as appellant apparently encourages, that a failure by law enforcement officials to record an interrogation violates due process and automatically mandates suppression.[2] Also, while we would certainly recommend officials take extemporaneous notes during questioning, a failure to do so certainly does not invalidate the information gained from the interrogation. Whether such a failure undermines the accuracy and credibility of later testimony is an issue uniquely for the finder of fact.
 
 II
 SUFFICIENCY OF EVIDENCE
 
 10
 Toscano argues the evidence was insufficient to convict him of conspiracy and aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). " 'Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy.' " United States v. Lopez, 625 F.2d 889, 895 (9th Cir.1980) (quoting United States v. Dunn, 564 F.2d 348, 357 (9th Cir.1977)).
 
 
 11
 Our review of the evidence in this case indicates it was more than sufficient to convict. One of the major meetings of the drug conspirators took place at Toscano's residence, where the drugs were readied for the trip to Idaho. One kilogram of the cocaine was buried in Toscano's backyard. Toscano accompanied the other conspirators on the drug selling trip to Idaho, where he waited with another coconspirator while the transaction occurred. The government also introduced evidence of Toscano's confession, where he stated full knowledge of the reason for the trip to Idaho and also disclosed the existence of the cocaine buried in his yard. Viewed in the light most favorable to the government, this evidence was more than sufficient to convict.
 
 III
 OUTRAGEOUS GOVERNMENT CONDUCT
 
 12
 Toscano argues the government conduct in this case was "intolerable" and violated his due process rights and thus urges this court to dismiss the charges sua sponte. We review de novo the issue of whether the government's conduct is sufficiently outrageous to violate due process. United States v. Sotelo-Murillo, 887 F.2d 176, 182 (9th Cir.1989).
 
 
 13
 A defendant might have a due process claim if the government conduct in question is "so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Simpson, 813 F.2d 1462, 1464 (9th Cir.) (quotations omitted), cert. denied, 484 U.S. 898 (1987). We have recognized this due process channel is a narrow one. Id. at 1465. In analyzing this issue, "the court looks only to the government's conduct objectively without regard to the defendant's criminal predisposition." United States v. Smith, 802 F.2d 1119, 1125 (9th Cir.1986).
 
 
 14
 The activities of the government in this case do not rise to such a high level of "outrageousness" that dismissal is mandated. Unlike the only case in which this circuit has found such a due process violation, Greene v. United States, 454 F.2d 783, 786-87 (9th Cir.1971), in which the government provided ingredients and was the sole customer for the defendant's bootleg whiskey, here the government was not responsible for the manufacture or acquisition of the cocaine. But see United States v. Winslow, 962 F.2d 845, 849 (9th Cir.1992) (finding no outrageous conduct where informant supplied food, paid for trip to bombing site, and even supplied bomb components to defendants). The fact the government may have exploited either the "friendship" the informant formed with the conspirators or the cultural deference the appellant may have felt for his elders does not necessitate due process dismissal. We have found no due process violations in the exploitation of far more intimate relationships than these. See, e.g., Simpson, 813 F.2d at 1465-1468 (allowing use of informant with close sexual relationship with defendant); Smith, 802 F.2d at 1126 (allowing use of defendant's brother to solicit drug transactions from him).
 
 
 15
 We also find unconvincing appellant's arguments that the informant's character or the fact he was offered incentives to perform undercover work rise to a sufficient level of outrageousness. We have long since recognized that "the use of paid informants and undercover police officers to ferret out drug dealers is not violative of due process." United States v. Prairie, 572 F.2d 1316, 1319 (9th Cir.1978). Such compensation may include money or other incentives, such as the dismissal of illegal immigration charges or status. Simpson, 813 F.2d at 1469 (no due process concerns where government drops investigation and prosecution of informant in exchange for cooperation). The use of an informant with a bad character does not raise due process concerns. "It is unrealistic to expect law enforcement officers to ferret out criminals without the help of unsavory characters." Id. at 1470 (finding no due process violation in continued use of informant known to be committing unrelated crimes); United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988) ("Governmental use of informants who previously engaged in wrongful or illegal activity does not constitute outrageous governmental conduct."), cert. denied, 488 U.S. 1016 (1989).
 
 
 16
 We find no outrageous governmental conduct in this case.
 
 IV
 INEFFECTIVE ASSISTANCE OF COUNSEL
 
 17
 Toscano finally argues he was denied effective assistance of counsel, in derogation of his rights under the Sixth Amendment. "To demonstrate ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense." United States v. Signori, 844 F.2d 635, 638 (9th Cir.1988) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Toscano must demonstrate "that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases." Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir.1986).
 
 
 18
 However, we ordinarily do not review claims of ineffective assistance of counsel on direct review. United States v. Pope, 841 F.2d 954, 958 (9th Cir.1988). "[T]he customary procedure in this Circuit for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255, and this Court has been chary of analyzing insufficiency of counsel claims on direct appeal." United States v. Rewald, 889 F.2d 836, 859 (9th Cir.1989) (quotations omitted), amended by 902 F.2d 18 (9th Cir.), cert. denied, 498 U.S. 819 (1990). "This is so because usually such a claim cannot be advanced without the development of facts outside the original record." United States v. Wagner, 834 F.2d 1474, 1482 (9th Cir.1987) (quotations omitted).
 
 
 19
 We recognize two narrow exceptions to this procedure. First, the court may consider this issue on direct appeal when "the record is sufficiently complete to allow us to decide the issue." United States v. Molina, 934 F.2d 1440, 1446 (9th Cir.1991) (quotations omitted). The record in the case before us is not sufficiently complete to meet that requirement. We have only appellant's broad allegations concerning counsel's failure to investigate issues and have no evidence in the record before us to consider appellant's other suppositions regarding counsel's failure to present certain arguments. Absent a complete record, we decline to review this issue on direct appeal, but leave Toscano free to pursue his claim in a subsequent habeas corpus proceeding.
 
 
 20
 Moreover, we will examine an ineffective counsel claim on direct review only when "the defendant's legal representation was so inadequate as obviously to deny him his sixth amendment right to counsel" and "the trial court's failure to take notice sua sponte of the problem might constitute plain error which may be considered on direct appeal." Wagner, 834 F.2d at 1482 (quotations omitted). Our review of the trial record indicates the performance of Toscano's counsel was not so obviously inadequate that the district court should have raised the issue sua sponte. "The district court was certainly not required by this record to question counsel's trial strategy, and it was not plain error for the court to fail to raise sua sponte the inadequacy of [Toscano's] representation." Id. at 1483.
 
 
 21
 We decline to consider Toscano's ineffective assistance claims on direct appeal.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We note that a waiver form which has been verbally translated does not have much greater credibility than an agent's testimony that a suspect has verbally waived his rights. The purpose of a written waiver is to provide the best record evidence of the express consent of the suspect; a verbally translated waiver is not a clear indication of a suspect's knowing waiver of his rights. Obviously, we would prefer that law enforcement officials give non-English speaking suspects waiver forms printed in a language they can readily comprehend. The execution of a written waiver, however, is not mandatory for a determination a suspect has validly waived his Miranda rights. North Carolina v. Butler, 441 U.S. 369, 371, 375-376 (1979); United States v. Gordon, 974 F.2d 1110, 1114, 1116 (9th Cir.1992)
 
 
 [2]
 We note that the case appellant cites to support this proposition, Stephan v. State, 711 P.2d 1156, 1158 (Alaska 1985), finds such a violation based solely on the due process clause of the Alaska Constitution