69 F.3d 545
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mohammad ARAFATI, Defendant-Appellant.
 No. 94-50619.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 14, 1995.*
Decided Nov. 1, 1995.
 
 1
 Before: Judges Browning and Pregerson, Circuit Judges, and Tanner,** District Judge.
 
 
 2
 MEMORANDUM***
 
 INTRODUCTION
 
 3
 Mohammad Arafati appeals his jury conviction and sentencing for possession with intent to distribute opium and importation of opium in violation of 21 U.S.C. Secs. 841(a)(1) and 952(a). Jurisdiction is under 28 U.S.C. Sec. 1291, and we AFFIRM.
 
 STANDARD OF REVIEW
 
 4
 A district court's factual findings are reviewed for clear error. United States v. Willard, 919 F.2d 606, 608 (9th Cir.), cert. denied, 112 S.Ct. 208 (1991). The question of voluntariness of statements is reviewed de novo. United States v. Guerrero, 847 F.2d 1363, 1365 (1988). The government must prove voluntariness by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972). This court reviews jury instructions for abuse of discretion. United States v. Wauneka, 842 F.2d 1083, 1088 (9th Cir.1988). We review the district court's application of the Guidelines de novo. United States v. Howard, 894 F.2d 1085, 1087 (9th Cir.1990).
 
 BACKGROUND
 
 5
 Defendant Mohammad Arafati arrived at Los Angeles International Airport (LAX) on Alitania Airlines from Rome, Italy on April 27, 1994.[1] Upon arrival at LAX, Arafati was approached by Customs Inspector Anthony Burke. Arafati was asked about his point of departure and the purpose of his trip. Inspector Burke noticed that Arafati's hands were shaking, he was perspiring, he would not make eye contact, and his voice was "shaky" when responding to questions. Based on these observations and an examination of his airline ticket and declaration form, Arafati was referred to a secondary inspection area. At secondary, Inspector Ly noticed a burning smell coming from the bottom of Arafati's suitcase. Arafati's luggage was visually inspected and then X-rayed. When the X-ray proved inconclusive, the suitcases were taken to another Customs Service location for further inspection. An inspection of the lining of the suitcases revealed a brown substance later determined to be opium. Arafati was then arrested and taken to a room where he remained for approximately two hours. Arafati was read his Miranda rights before being interviewed by Agent Panning. Although first denying any knowledge of the drugs, Arafati later admitted knowingly carrying them. After a hearing, on June 27, 1994, Arafati's motion to suppress evidence and post-arrest statements was granted in part and denied in part. On August 22, 1994, Arafati's second suppression motion was denied. Arafati was convicted and sentenced to 63 months in prison, followed by 3 years supervised release. This appeal followed.
 
 A. Voluntariness of Confession
 
 6
 Arafati contends that his post-arrest admission and waiver of rights was involuntary, and should have been suppressed.
 
 
 7
 An inculpatory statement is voluntary only if it is the product of a rational intellect and a free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960).
 
 
 8
 The test for voluntariness is "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." Derrick v. Peterson, 924 F.2d 813, 817 (9th Cir.1990), quoting Guerrero, 847 F.2d at 1366.
 
 
 9
 A statement is involuntary if it is "extracted by any sort of threats or violence [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." Guerrero, 847 F.2d at 1366.
 
 
 10
 The Supreme Court has held that coercive police conduct is a necessary predicate to the finding that a confession is involuntary. Derrick, 924 F.2d at 818, citing Colorado v. Connelly, 479 U.S. 157, 167 (1986).
 
 1. Custodial Interrogation
 
 11
 Arafati identifies several aspects surrounding his interrogation as coercive. After being placed under arrest, Arafati was detained for two hours prior to being questioned. He was then taken to a room where he claims Officers Panning and Schultz: (1) interrogated him for one hour while he was handcuffed to a chair, (2) raised their voices and used profanity, (3) paced around the room and stood behind him during questioning in an attempt to intimidate him, and (4) refused to allow Arafati to make any phone calls.
 
 
 12
 In response to Arafati's allegations, Agent Panning indicated that only one of Defendant's wrists was handcuffed to a chair; that while both he and Officer Schultz raised their voices several times during the interrogation, he could not recall if profanity was used; and that, while occasionally getting up to retrieve a form or answer the door, he and Schultz remained seated during the interrogation, and made no attempt to intimidate Arafati.
 
 
 13
 Arafati further alleges that officers told him that he faced lengthy incarceration if he did not admit knowing about the drugs in the suitcase, but that he could get a lower sentence if he admitted knowing about them. In response, Officer Panning testified that he told Arafati he was facing jail time (though no specific time period was mentioned) and that if he cooperated, his cooperation would be made known to the United States attorney.
 
 
 14
 All statements made by a suspect in response to a promise made by law enforcement personnel are not per se invalid. Guerrero, 847 F.2d at 1366. Rather, the promise must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances. Id. Absent threats or other coercive practices, for instance, an interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect. Id. at 1366, n. 2. No physical violence or threats were made against Arafati. On balance, the officers' conduct was not coercive.
 
 2. Heightened Susceptibility
 
 15
 Arafati argues that the conduct of the officers was coercive because of his heightened susceptibility to pressure resulting from his mental condition.[2]
 
 
 16
 In Derrick v. Peterson, 924 F.2d 813 (9th Cir.1990), this court rejected the assertion that a defendant's personal attributes or vulnerabilities, such as age or mental capacity, are relevant in determining whether the police engaged in improper conduct. A defendant's mental capacity is relevant to the due process inquiry only if the court first concludes that the police conduct was coercive. Id. at 818.[3]
 
 
 17
 In the instant case, the district court did not address the second prong of the Connelly test (Defendant's mental capacity), and accepted Arafati's claims regarding post-traumatic stress disorder without addressing their validity, stating:
 
 
 18
 I don't see that the threshold has been met here because I don't see any overreaching by these officers. The raising of voices, even given the condition that I'm willing to accept from the report, that does not to me suggest any overreaching. The use of profanity doesn't necessarily unless it was used in such a manner and to such a degree that it would be unsettling to one of this person's state of mind as suggested by the report. I don't see any of those things there, therefore we don't reach the second prong, and I have no reason to believe that this conversation was not one that was voluntary.
 
 
 19
 Because the district court found there was no police coercion, it properly declined to address Arafati's mental condition. We find that Arafati's confession was voluntary.
 
 B. Miranda Waiver
 
 20
 Miranda v. Arizona, 384 U.S. 436 (1966), requires police to warn an in-custody defendant of his right against self-incrimination prior to interrogating him.
 
 
 21
 To be effective, a waiver must, at a minimum, be voluntary. Connelly, 479 U.S. at 169. However, the government must also prove by a preponderance of the evidence that the waiver was knowing and intelligent. Derrick, 924 F.2d at 820.
 
 
 22
 The record shows that Panning read Arafati his rights in English, Arafati appeared to understand English without difficulty, and Arafati told Panning that he understood the warnings. The district court's finding that Arafati understood his rights is not clearly erroneous.[4] The totality of the circumstances surrounding the interrogation indicate that Arafati was not coerced into effecting a waiver of his rights.
 
 C. Jury Deliberations
 
 23
 Arafati next argues that the district court violated his due process rights by invading the province of the jury, and coercing it into rendering a verdict.
 
 
 24
 The trial began on August 26, 1994, and the jury began deliberating the same day. After 3 days of deliberations, the district court summoned the parties into court, and stated its intent to inquire of the jury as to its delay in reaching a verdict. Over defense counsel's objection, the district court summoned the jury into open court and inquired as follows:
 
 
 25
 Ladies and gentlemen, I have called you back in because it appears to me that there may be some problem that you're having. I'm not going to intrude in your deliberations. But you recall that this matter only took about three days to try and you're taking longer than that to reach a decision in this case. Now, as I say, I don't wish to interfere at all, but if you are having some trouble, if there is something that we can do to aid you in your deliberations by way of read-backs from the transcripts, that would have to be prepared because we don't have any transcripts yet, but read-backs of testimony, anything of that nature, please let us know. Excerpt of Record at 133.
 
 The court then continued its inquiry:
 
 26
 THE COURT: Juror number five, Mr. Rovang, you're the foreperson, sir?
 
 
 27
 JURY FOREMAN: yes, sir.
 
 
 28
 THE COURT: Is there something that you think would be helpful to you and your fellow jurors in your deliberations?
 
 
 29
 JURY FOREMAN: Nothing I can think of right offhand, no.
 
 
 30
 THE COURT: Do you wish to continue your deliberations?
 
 
 31
 JURY FOREMAN: I think it's worth while [sic] for maybe until the end of the day tomorrow. We're going through some detailed stuff right now.
 
 
 32
 THE COURT: Very well. As I say, I in no way wish to intrude upon your deliberations but merely wanted to inquire if we could be helpful with any read-backs or anything of that nature ... And if you do need any help of any kind, please put it in a note and let us know ...[5]
 
 
 33
 An Allen charge is upheld in all cases except those where it's clear from the record that the charge had an impermissibly coercive effect on the jury. United States v. Ajiboye, 961 F.2d 892, 893 (9th Cir.1992).
 
 
 34
 In assessing the coerciveness of a charge, we evaluate (1) the form of the instruction; (2) the period of deliberation following the jury charge; (3) the total time of deliberations; and (4) other indicia of coerciveness or pressure upon the jury. United States v. Cuozzo, 962 F.2d 945, 951 (9th Cir.1992).
 
 
 35
 Appellant's argument focuses on the second factor. Appellant states: "[g]iven that just a few hours after the district court's unsolicited instruction, the jury returned verdicts of guilty, it is apparent that the guilty verdicts were coerced." Appellant's Opening Brief at 20. The record shows that the jury deliberated approximately two more hours before reaching a verdict after the instruction. In United States v. Bonam, 772 F.2d 1449, 1451 (9th Cir.1985), this court held that 1 1/2 hours of deliberation after an Allen charge did not raise suspicion of coercion.
 
 
 36
 In this case, the district court called the parties into court, but did not admonish the jurors to reconsider their positions, nor did the judge direct the jury to reach a verdict or admonish them about the need to do so within a certain time frame. In fact, the judge stressed that it did not wish to intrude upon the jury's deliberations. The judge did no more than inquire whether the jury desired read-backs or other aids in its deliberations.
 
 
 37
 In light of Cuozzo, we find that the district court's discussion with the jury was not the equivalent of an Allen charge, nor did it impermissibly coerce the jury into rendering a verdict.
 
 D. Downward Role in the Offense Adjustment
 
 38
 Arafati argues that the district court erred in denying him a role in the offense reduction pursuant to U.S.S.G. Sec. 3B1.2 for "minimal participant".
 
 
 39
 We review a trial court's determination that a defendant is not a minor or minimal participant for clear error.[6] United States v. Torres-Rodriguez, 930 F.2d 1375, 1389 (9th Cir.1991).
 
 
 40
 The Defendant has the burden of proving entitlement to a downward adjustment for role in the offense by a preponderance of the evidence. United States v. Howard, 894 F.2d 1085, 1090 (9th Cir.1990). Section 3B1.2 of the Sentencing Guidelines provides in pertinent part:
 
 
 41
 Based on the defendant's role in the offense, decrease the offense level as follows:
 
 
 42
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 
 
 43
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 
 The Commentary to section 3B1.2 provides:
 
 44
 [I]t is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marijuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.
 
 
 45
 U.S.S.G. Sec. 3B1.2, comment. (n. 2).
 
 
 46
 Possession of a substantial amount of narcotics is grounds for refusing to grant a sentence reduction. United States v. Lui, 941 F.2d 844, 849 (9th Cir.1991); see also United States v. Webster, 996 F.2d 209, 212 n. 5 (9th Cir.1993) (a finding that defendant carried a substantial amount of narcotics forecloses an adjustment for minimal participant). Moreover, one's status as a courier does not necessarily make one a minimal or minor participant. Lui, 941 F.2d at 849 (stating that "a defendant may be a courier without being either a minimal or a minor participant").
 
 
 47
 Arafati argues that he is entitled to a reduction, as he was substantially less culpable than both the individual in Iran who gave him the suitcases to deliver, and the individual in San Jose who was to pick them up. The probation officer did not agree. In paragraph 3 of the Presentence Report, the probation officer rejected Arafati's assertion that he was entitled to a four level reduction for minimal participant, noting that Arafati admitted at the time of his arrest that he knowingly imported the opium and intended to sell it in San Jose for $10,000. The court also noted that Arafati possessed two kilograms of opium. In resolving objections in the presentence report, it is sufficient if the district court adopts the conclusions in the Presentence Report. United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990). The district court based its justification for the sentence imposed upon "that which is stated in the probation officer's report as well as that stated by the court [at sentencing]." Appellants Excerpt of Record at 292. On this record, the district court's refusal to grant a downward role adjustment to Defendant was not clearly erroneous, and the district court correctly applied the Guidelines. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Jack E. Tanner, Senior District Court Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although the flight had originated in Rome, Defendant's original point of departure was Tehran, Iran
 
 
 [2]
 Defendant was diagnosed by psychologist Sean Paakdaman, Ph.D., as suffering Post Traumatic Stress Disorder, resulting from having witnessed the execution of his friends and others, during the Iran/Iraq war. The government did not dispute this diagnosis
 
 
 [3]
 In Arizona v. Fulminante, 499 U.S. 279, 286 (1991), the Supreme Court confirmed the Connelly totality of the circumstances test for determining the voluntariness of a confession. However, cases decided after Fulminante continue to apply the Peterson rule, which allows consideration of a defendant's mental condition only after a finding of coercion. See United States v. Huynh, 60 F.3d 1386, 1388 (9th Cir.1995) (defendant's subjective characteristics are relevant to the voluntariness inquiry when there is evidence of psychological coercion)
 
 
 [4]
 The district court suppressed Arafati's written waiver, but not his oral waiver of Miranda rights. Appellee's Excerpt of Record at 248
 
 
 [5]
 Excerpt of Record at 133-34
 
 
 [6]
 Defendant has argued only an adjustment for minimal participant, therefore we do not address an adjustment under subsection (b) of 3B1.2 for minor participant