**Joann Jean TRETHEWEY, Petitioner—Appellant,**

v.

**Teena FARMON, Warden, Respondent— Appellee.**

No. 00–16747.

D.C. No. CV–99–03168–MJJ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 2002.

Decided May 2, 2002.

Before GOODWIN, THOMAS, and W. FLETCHER, Circuit Judges.

## MEMORANDUM *

Joann Jean Trethewey appeals a judgment denying her petition for a writ of habeas corpus. Because the state court rulings at issue were neither contrary to, nor an unreasonable application of, clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), we affirm.

1. Miranda Advice.

Petitioner contends that, under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and its progeny, she was "in custody" on April 3 prior to and during the time of her initial confes-

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

sion to Detective Bunch, and that the state trial court erroneously admitted her statements made during this time frame.

In determining whether an individual was in custody for purposes of *Miranda,* we ask whether, given the circumstances surrounding the interrogation, a reasonable person in the petitioner's shoes would have felt that "he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). "[A] court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (citations and internal quotation marks omitted). In making this inquiry, we consider "the objective circumstances of the interrogation, not [ ] the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* at 323, 114 S.Ct. 1526.

■ Petitioner's strongest points favoring a finding of custody are that she was in the interview room for over two hours, and that Bunch made some intimidating statements to petitioner (i.e., Bunch told petitioner that he had probable cause to arrest her) over the course of the interview. However, the overall context and circumstances of the April 3 interview indicate that petitioner was not in custody: petitioner came of her own free will to the police station; petitioner's sister and brother-in-law accompanied her to the police station (and waited for her in the station lobby); when petitioner seemed reluctant to cooperate, Bunch escorted her out to her relatives in the lobby; when petitioner ultimately decided to cooperate, Bunch told petitioner that she was free to

leave and that she was not under arrest; when petitioner later wanted to talk to her relatives, Bunch brought her relatives to the interview room; and, lastly, the door remained unlocked during the course of the interview. Given the circumstances, a reasonable person in petitioner's shoes would have felt free to terminate the interview and leave. Accordingly, petitioner was not in custody for purposes of *Miranda.*

2. Voluntariness of Confession.

■ In evaluating the voluntariness of statements made to law enforcement officials, we examine whether "considering the totality of the circumstances, the government obtained the statement[s] by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Leon Guerrero,* 847 F.2d 1363, 1366 (9th Cir. 1988). "A statement is involuntary if it is extracted by any sorts of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence." *Id.* (citation and internal quotation marks omitted).

■ We find that Bunch's attempts at getting petitioner to be truthful did not amount to coercion. *See Amaya–Ruiz v. Stewart,* 121 F.3d 486, 494 (9th Cir.1997) (holding that encouraging suspect to tell the truth does not in itself amount to coercion). Similarly, Bunch's statements regarding probable cause and petitioner being a victim of circumstance were not coercive. Nor did Bunch's suggestion of confidentiality amount to coercion. He mentioned confidentiality only in response to petitioner's concern that John Martin's associates would hurt her if she talked to the police. Bunch urged her not to worry about John Martin's associates, stating that the conversation would be confidential: Bunch was not implying that petition-

er would receive lenient treatment from the legal system.

The most problematic of Bunch's statements occurred just prior to petitioner's confession. Petitioner began to cry and asked if she was going to jail. Bunch replied: "No, we are going to work through this, okay? I told you, this is positive, okay? I'm going to turn this thing around with you today, okay?" The state appellate court noted that Bunch's statement was not a promise of leniency because "[i]t lacked the element of quid pro quo; Bunch did not assure Trethewey that if she confessed she would avoid jail, an inherently unlikely scenario. Instead, he was attempting to deflect her attention *away* from the penal consequences of an admission, and toward the positive consequences of being truthful. Bunch may not have been acting in Trethewey's best interest, but he was under no obligation to do so." We agree. This "good cop" effort to establish a relationship with a suspect promises nothing, but reaches for conversation. Bunch may have been disingenuous, but he was not coercive.

### 3. Post–Miranda statements.

Petitioner next argues that the state court erred in allowing the jury to hear her post-*Miranda* statements because those statements were the product of coerced pre-*Miranda* statements. In other words, petitioner argues that the state trial court should have suppressed her post-*Miranda* statements because they were "fruit of a poisonous tree." She is wrong for two reasons: (1) petitioner's pre-*Miranda* statements were voluntary; and (2) "The fruit of the poisonous tree doctrine does not operate in the Miranda context in the same way that it does in the Fourth Amendment context." *United States v. Orso,* 266 F.3d 1030, 1034 (9th Cir.2001) (citing *Oregon v. Elstad,* 470 U.S. 298, 306–09, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985)).

The fruit of the poisonous tree doctrine operates in the Fifth Amendment context as follows: if the defendant's pre-*Miranda* statement was coerced in violation of the Fifth Amendment, then the court must suppress the defendant's post-*Miranda* statement unless the post-*Miranda* statement was sufficiently attenuated from the coercion to remove any "taint." *See United States v. Wauneka,* 770 F.2d 1434, 1440 (9th Cir.985). "If, on the other hand, the prior statement was voluntary in the sense that it was not coerced in violation of the [F]ifth [A]mendment, though obtained in technical violation of the *Miranda* requirements, the court should suppress the statement given after the *Miranda* warning only if the court finds that the subsequent statement was not voluntarily made." *Id.*

■ Petitioner's statements to Bunch up to and including petitioner's initial confession were not made in violation of *Miranda* because petitioner was not "in custody" during this time frame. However, the statements elicited between her initial confession and her receipt of *Miranda* warnings violated *Miranda* because once she confessed to attempted murder she was "in custody" and entitled to *Miranda* warnings. These statements were properly suppressed by the trial court, but are the basis for petitioner's "fruit of the poisonous tree" claim. She argues that the statements she made after receiving *Miranda* warnings should have been suppressed because they were the "fruit" of the illegal statements made after her confession and before she received the warnings. We reject this claim because even though the statements in question violated *Miranda,* they were voluntarily made and do not require that petitioner's later statements be suppressed. *See Wauneka,* 770 F.2d at 1439–40. The statements made in

between petitioner's initial confession and her receipt of a *Miranda* warning were made without hesitation in response to Bunch's relatively straightforward questions. The entire interaction was more conversational than the pre-custody interaction, and nowhere during the interaction does it appear that Bunch used psychological coercion or improper inducement in order to overcome petitioner's will.

We further hold that petitioner's post-*Miranda* statements and her *Miranda* waiver were voluntary. Bunch clearly, though somewhat belatedly, advised petitioner of her *Miranda* rights. After advising her of her *Miranda* rights, Bunch immediately asked petitioner if she wished to cooperate. She said that she "can't go back now." Bunch then said "Right. Do you—do you wish?" Petitioner replied "Yes." Bunch then asked her "Do you want to continue? You're—." Petitioner again replied "Yes." Bunch later said "Okay. Do you wish to continue cooperating?" Petitioner again replied "Yes." Petitioner proceeded to engage in a re-enactment of the crime for the authorities, accompany police to her apartment, and give a statement at the police station. Police provided petitioner with dinner, and petitioner was able to speak with her family during this time. She may have been a reluctant volunteer because she had recently attempted to kill her lover's wife, but she was not compelled to talk.

Petitioner makes much of the fact that Bunch failed to advise her that her *prior* statements could not be used against her. This failure alone, however, is not determinative of whether or not petitioner's waiver was voluntary. *See Elstad,* 470 U.S. at 316, 105 S.Ct. 1285 (observing that a requirement that officer inform suspect that suspect's prior statement can't be used against him is "neither practicable nor constitutionally necessary").

In sum, we conclude that the state court's admission into evidence of petitioner's post-*Miranda* statements was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 4. "Stayed enhancement"

Petitioner next seeks reversal of a sentence enhancement, California Penal Code Section 12022.9(a), which provides:

> Any person who, during the commission or attempted commission of a felony, knows or reasonably should know that the victim is pregnant, and who, with intent to inflict injury, and without the consent of the woman, personally inflicts injury upon a pregnant woman that results in the termination of the pregnancy shall, in addition and consecutive to the punishment prescribed by the felony or attempted felony of which the person has been convicted, be punished by an additional term of five years in the state prison.

The jury found the enhancement to be "true," but the judge stayed the enhancement. Both the state court of appeal and the district court denied petitioner's claim for relief, but on different grounds.

The California Court of Appeal found petitioner's claim to be moot. The district court, on the other hand, found that petitioner's claim was not moot, but that it failed on the merits. We agree with the ultimate result reached by both lower courts (i.e., that petitioner is not entitled to a writ on this claim), but we take a third route to arrive at that result.

■ Petitioner is unable, at present, to demonstrate any concrete injury arising from the stayed enhancement. We note, however, that if somehow the stay were removed, and the sentence enhancement was "activated," then petitioner would be able to demonstrate a cognizable injury.

Although it may be highly unlikely that petitioner's stayed enhancement will ever be activated, the possibility remains. Accordingly, petitioner's challenge to her stayed sentence enhancement fails, not because it is moot, but rather because it is not yet ripe. *See Hodgers–Durgin v. De La Vina,* 199 F.3d 1037, 1044 (9th Cir. 1999) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citation and internal quotation marks omitted). We therefore decline to reach the merits of petitioner's statutory challenge.

AFFIRMED.